Case No. 13-5091, Sieben v. United States, Ms. Hewey. Good morning. Thank you, Your Honor. May it please the Court, my name is Rachel Hewey and I represent the appellant, Mary Sieben. Mary Sieben is a highly decorated former Air Force Colonel who served in the armed services for 27 years. She was injured while on duty in Iraq and upon returning has suffered from debilitating spinal injury and post-traumatic stress disorder. Using the Veterans Administration Schedule for Rating Disabilities, the VA correctly recognized that she was 100% disabled because of her spinal injury and 70% disabled due to anxiety disorder with features of post-traumatic stress disorder. Using the same rating system, initially the Air Force correctly determined that she was 100% disabled both in 2006 and again in 2008 when the Air Force rating examiner stated that she was significantly disabled. In 2011, the Air Force incorrectly decreased her rating to 20% for her spinal injury and continuously failed to rate her post-traumatic stress disorder for traumatic brain injury. The earlier findings that you mentioned were expressly provisional, temporary, is that right? This is what it looks like now, these are conditions, whatever they were talking about, that may not have fully stabilized so we put her on the temporary disability retirement list and we watch and wait and see where they plateau. The statement I gave to you that she was significantly disabled, that was from a doctor's review of her in 2008, that wasn't provisional. The Air Force findings in 2006 and 2008 were for temporary disability, that is correct. So what's the standard of review, what are you asking us to overturn and what is the standard of review with respect to that which you're asking us to overturn? Certainly, there are two legal issues that require at a minimum remand in this case. The first is both the Court of Claims and the Air Force applied the wrong legal standard in evaluating her claim to disability. Instead of considering whether she could engage in a substantially gainful occupation, which is what's required, they required her to prove that she was totally disabled and unemployable and that's a much higher standard. This court in Robinson already recognized that a veteran doesn't have to be totally unemployable, 100% unemployable, to be unable to engage in substantially gainful occupation. And indeed, the regulations specifically recognize that marginal employment is not substantially gainful occupation. Cases have interpreted that to say that part-time employment... The government's principle response is not to say total unemployability is actually required. It is rather that the relevant finder's effect here in fact applied the correct standard. That is the government's argument, but the reality is that when you look at what the Air Force and the Court of Claims did, they did not apply the substantially gainful occupation standard. The Court of Claims in its decision, when it was talking about the Air Force determination, said that the Air Force said that the evidence... Oh, I'm sorry, that would be A14-15? Okay, so this is the Court of Claims decision in 2013. The Court of Claims decision said that the Air Force said that the evidence did not support a finding that Col. Sieben is unemployable. That's bolded in my notes, unemployable. This is again a quote. Explained that, in light of all the evidence, it could not conclude that plaintiff was totally disabled. Once again, that's bolded in my notes, totally disabled. Even if some of the evidence tended to show that she was. Then the Court of Claims goes on to describe its determination. The Court concludes that there is sufficient information contained within the record and referred to by the Board to support the determination that she is not totally disabled. While this Court may have weighed the evidence differently, that is not its role here. The problem with both the Air Force and the Court of Claims is that Ms. Sieben does not have to be totally disabled or 100% unemployable. The proper standard is whether she can engage in a substantially gainful occupation. Both the Court of Claims and the Air Force required a much higher standard. And the reason we know that is not just because the Court of Claims and the Air Force used imprecise language. The reason that we know that they held her to this much higher standard is because all of the evidence, when reviewed in this case, demonstrates that she cannot engage in a substantially gainful occupation. I'll refer the Court to pages 20 to 21 of the Blue Brief where we go through the evidence in detail. And just a summary really quickly here. Both in 2006 and 2008, the Air Force said she was 100% disabled, including the medical evaluation that said that she was significantly disabled and no longer able to perform any significant military function on an ongoing or consistent basis. This is a medical evaluation in 2008. The 2008 one you referred to? The 2008 one, yes. Do you want to cite it? No, no, that's okay. Okay. This is consistent with the VA's rating that she was 100% disabled due to her spinal injury. Keep in mind, the VA and the Air Force are supposed to be using the exact same measure of how someone is disabled, the VASRD. In 2009, Dr. Barr said, this is again an Air Force-directed evaluation. Actually, just because you mentioned the VA, this is a detour. Ms. Sieben has benefits from the VA, is that right? She is rated 100% disabled due to her spinal injury from the VA. I believe that allows her to have maybe some medical benefits, but I couldn't speak to exactly what she gets from that. You can't clarify how whatever she would get through the Title 38 VA claim system relates to or doesn't relate to by supplementing, by displacing the benefits at issue here? I can speak to it a little bit. I understand that the VA provides some benefits. If she were rated disabled by the Air Force, there would be additional benefits. My understanding is the exact details between them, I couldn't tell the court right now. I'm sorry. Sure. In 2009, Dr. Barr, again, this is an Air Force-directed medical evaluation, said that she had debilitating low back pain that prevents her return to active duty. It is my opinion, based upon the evidence, that the back pain will continue and will be activity-related. Activities that require prolonged sitting or standing markedly worsen the symptoms. So, again, all the evidence that we have from 2004 until today is that she is 100% disabled due to her spinal injury. But the question is not whether she is 100% disabled. It is whether she can engage in substantially gainful occupation. And there is not a shred of evidence that suggests that she can. I know that the Air Force is going to point to the physician's assistant's GARS report. And it is true that physician's assistant's GARS has said there is a possibility she would be able to perform predominantly administrative duties. However, he went on to state that he did not recommend that she continue in the Air Force because it is highly likely that she would be unable to perform her Air Force duties. So, once again, all of the evidence in the record demonstrates that she can engage in a substantially gainful occupation. Is the substantially gainful employment standard limited to ability to serve in the Air Force or would it include the whole range of substantially gainful employment in the private sector, for example? The whole range of substantially gainful employment in the private sector. So, the reason that we know that the Air Force and the Court of Claims applied the long rule standard is not just because they explicitly said they were applying the wrong standard of total unemployability, unemployable and totally disabled. It is because when you look at the evidence, that is what had to happen. So, Judge Prost, I apologize. Coming back to your question, the standard of review about whether a legal error was in the decision is review de novo. So, at a minimum, this court should remand the Air Force for consideration under the proper legal standard. As a minimum. Alternatively, it would be appropriate for this court to reverse because the undisputed factual record demonstrates that Ms. Steven cannot engage in a substantially gainful occupation. Are there any further questions on the substantially gainful occupation? Otherwise, I'll move on to due process. Okay. Okay. Second, the Air Force violated Ms. Steven's right to due process in two separate ways. First, despite her repeated efforts to be rated for her post-traumatic stress disorder and her traumatic brain injury, the Air Force failed to evaluate her for those conditions. Under 10 U.S.C. 1216a.b., the Air Force is required to take into account all medical conditions that render the member unfit to perform the duties of the member's office. The accompanying regulations require a comprehensive physical examination to account for all conditions that might entitle a veteran a disability. The problem, again, in this case is that the court did not do that. The Air Force did not do that. The Air Force failed to account for Ms. Steven's claim for post-traumatic stress disorder. Did you introduce this discussion under the rubric of due process? Yes. It seems to me all you've said in the last eight or nine sentences is something about following or not following certain regulations. Sure. How does this connect with the court? Sure. Well, this court's decision, 2009, in Cushman, recognized that there was a right to due process before the Air Force because benefits are a right. Cushman was technically before the Veterans Administration, right? Not the Air Force. It was dealt with veterans' benefits. That's correct. That is correct. That is correct. And I should say that for the record, we presented the due process argument in our opening brief, and I don't think that the government actually disputed that there was a right to due process. I will say that there have been other courts evaluating it under the higher standard of arbitrary and capricious that have said that when an agency fails to evaluate a veteran for a potentially disabling injury and then denies that veteran's claim because of the lack of evidence, this court has said that's arbitrary and capricious. This court's 2010 decision in Cronin is very similar to this case, actually. In Cronin, what happened was the— Was Cronin a due process violation? No, it was not a due process. I'm saying even if—we raised the due process argument saying that there is a right to due process. I don't know that the government disputed that. But I'm going to say even if— Well, whether there's a right to due process is almost irrelevant. The question is how was or whether there was a due process violation in this case, and I guess I'm not quite hearing your analysis of that. Understand. Understand. We think that there was a due process. There was a due process violation because the procedures that needed to be followed weren't followed in this case, and that did violate her right to due process. And is there a case where we found that there was a due process violation? I mean, Cushman was a very draconian set of circumstances in that case. Any case that is comparable to yours in which due process has been violated? Cushman is the case that we would be relying on for the due process. If this court wanted to view this case under the lens of arbitrary and capricious, then there's a lot of cases that say failure to evaluate a potentially disabling condition is arbitrary and capricious, and I'll direct this court to this court's decision in Cronin. The 2010 decision in Cronin was actually very similar to this case. But just to be clear, I mean, you haven't presented to us an issue, an argument about reversal or vacater based on some arbitrary and capricious standard. Putting aside your first argument about failure to follow a statute, about the employability standard. I would say at a minimum, it is true that this case, we said that this is a violation of due process because the agency did not follow its regulations. And we think that that is a violation of due process. I confess that there's no case from this court that says that's a violation of due process. But we would use Cushman to say Cushman says that you have a right to due process before the agency. The agency is supposed to follow its regulations. It did not. And the result is that we didn't get rated for something that we had a right to be rated for. That's a violation of due process. That's more than Cushman said. That is more than Cushman said. But there's a litany of cases like this. So yes, it's true that what we raise is due process. But this court could easily say that it was arbitrary and capricious. That would be completely appropriate because we've laid out what we're looking for here, which is we're looking for a remand so that she has a right to have her day in court. She's never been evaluated. The reality is even the government doesn't really dispute that she has post-traumatic stress disorder. Even the government doesn't really dispute that it was because of her service time in Iraq. What the government says was, well, it wasn't evaluated, but what are you going to do? That's not the right answer here. The right answer is that this should go back and she should be evaluated for a condition that she has that nobody disputes that she has, that the VA, using the exact same rating standard that the Air Force is supposed to be using here, has found her 70% disabled for. So anyway, Cronin is one case I pointed out. It's a 2010 case from this court. And what the court said in that case was it was very similar to this case. The veteran had post-traumatic stress disorder, but the claim was rejected because there wasn't evidence that on the time that the veteran was put on the TDRL that the condition existed. And this court just said absolutely not. There was evidence that the triggering incident occurred while the veteran was on active duty. The veteran apparently has post-traumatic stress disorder. We're going to remand and you need to evaluate them properly. So I would say that the same thing should happen here. And the Court of Claims also considers this issue relatively frequently. And I point this court to the Stewart, two recent cases, two 2013 Court of Claims cases, Stewart and Meidel. In both of those cases, exactly the same issue it was. Let me get the exact quote. Okay, so Cronin, it was 2010 U.S. App, Selexis site, 1402. Stewart was... That's a non-presidential. Non-presidential. Stewart, 108, Federal Claims, 458. And that case said, This argument ignores the fact that it is the defendant, not plaintiff, that is the cause for the dearth of evidence. To deny plaintiff's claim for lack of proof that he was unfit at the time of discharge would reward defendant for failing to perform and document required medical evaluations and would unfairly impose an impossible evidentiary burden on plaintiff. Likewise, in the Meidel case, again, Federal Claims, 108, Federal Claims, 570. These are both 2013 cases. By failing to consider whether plaintiff's foot conditions contributed to rendering him unfit, the ABCMR violated the applicable statute and acted arbitrarily and capriciously. And likewise, going back to Cronin, this court, in non-presidential opinion, documentation is lacking of both the alleged principal egregious evoking stressors and that this condition was separately unfitting at the time of her placement on the TDRL. That's what the decision was. This court vacated because there was evidence in the record detailing numerous traumatic stressors required for developing post-traumatic stress disorder that occurred while Cronin was on active duty. So, again, it's well settled that she has a right to be evaluated for post-traumatic stress disorder and it's well settled that that has not occurred here. I hope that this court looks at the evidence in this case and the briefing in this case and the oral argument and says this veteran who served honorably for 27 years and who was injured while on duty in Iraq has a right to have her day in court. The outcome, obviously, we can't say right now. But she has a right to have her condition at least evaluated. Okay. Thank you, Ms. Hewitt. Mr. Mandelbaum. May it please the court? My name is Josh Mandelbaum representing the government. Counsel has argued that the Air Force did not apply the proper standard for substantially gainful occupation. The standard comes from the Permanent Defense Policy Memorandum dated October 14, 2008, which is at page 1127 of the record at E7.3 towards the bottom. The standard is unable to secure or follow a substantially gainful occupation as it states there. And in the Air Force's decision from the Formal Physical Evaluation Board... I mean, your friend was showing us the Court of Claims pointing to some language in the Court of Claims' opinion, I guess. I assume you followed it too. I don't recall exactly where it is now. This seems to suggest a different standard may have arguably been applied. Well, Your Honor, what the Court of Federal Claims' opinion is doing is using shorthand for the standard. At section E7.3 and at 38 CFR section 4.16, the name of these sections is total disability based on unemployability. I think just using the phrase unemployability, using the phrase total disability, it's just a shorthand for referring to the standard. It's much easier to say that than to say unable to secure or follow a substantially gainful occupation. And this issue about the proper standard was not raised below, so I don't believe that the trial court was as cautious as it maybe should have been to be specific about the substantially gainful occupation standard. And certainly the Air Force was aware of the proper standard and applied it. In the formal PEB decision, this is at page 438, at the end of its remarks, the Air Force wrote the FPEB consider the DOD's guidance from the 14 October 2008 DTM paragraph E7.3 stating total disability ratings for compensation may be assigned where the scheduler rating is less than total when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation. What are you reading from? It's extraordinary when there's no paragraphing in the document. It's a little hard to... That section is roughly one-third from the bottom of page 438, Your Honor. 438. And the sentence begins the FPEB at the very end. That's at the right-hand side of the page. So the Air Force, they cite and quote the proper standard right at the end of their decision, and then they immediately apply it. And they conclude that the standard had not been met in this case. So the standard was applied properly. All of these Air Force courts, the informal PEB, the formal PEB, the Secretary of the Air Force Personnel Council, they all consider all the evidence, apply the proper standard, and they all reach the same conclusion. That conclusion is supported by substantial evidence. So the trial court properly held that the decision was supported. The counsel has suggested that the decision is inconsistent with a decision from the Department of Veterans Affairs, which was made back in 2007, that the decision was effective 2006, made back in 2007. That decision was made before any of the evidence that the Air Force relied on existed. The subsequent decisions by the Air Force granting Ms. Heuban a temporary 100% disability rating were made before the evidence that the Air Force recently relied upon existed. The records from Ms. Heuban's... Can you shed any light on the question that I asked Ms. Huey about the relation between the benefits under the VA system and the benefits that are at issue here? Yes, Your Honor. A veteran cannot be compensated twice by both the Air Force and the VA for the same injury. So my understanding is that the one benefit of being rated by the VA and by the Air Force is that benefits paid by the VA are tax-free and benefits from the Air Force can be taxed. Are the amounts the same, similar, radically different, whatnot? If Ms. Heuban obtained a 100% rating from the Air Force, her benefits would be higher than just a 100% rating from the Department of Veterans Affairs. How much that would be, I don't know. Ms. Heuban... But you're saying the veterans benefits would be tax-free, so obviously there's some offset there. But you can't duplicate, right, it's either one or the other. Yes, Your Honor. And Ms. Heuban... I'm not sure how this would interplay with both of those issues, but Ms. Heuban, she'll be eligible for retirement from the Air Force at age 60. She'll be 60 this year. So it's not that Ms. Heuban is not receiving benefits from the Air Force. What about the PTSD benefit then? I think the other side says that she's getting her veterans benefit includes some rating for disability for PTSD. Yes, Your Honor. The VA has rated her for anxiety disorder with features of PTSD. So what is she seeking here then? Is that a 70% rating, so she's seeking a 100% rating here, and that would be the difference, or what? No, Your Honor. It's just an alternative basis for Ms. Heuban to seek a higher rating from the Air Force. She's seeking a rating from the Air Force for unemployability. She's also arguing that she should be rated higher based on alleged PTSD and an alleged brain injury. When did the benefits under the temporary disability retirement list come to an end or get dramatically reduced? They were ended on, I believe, March 31, 2011, Your Honor. It was in 2011. It was shortly before. She was placed on the TDRL in April of 2006. So am I putting these things together? What we're talking about, if indeed she's eligible for non-disability retirement, sometime this year we're talking about benefits from the Air Force for this three-year period, subject to whatever offset there might be from VA benefits as a substitute? I think that period of time is the main issue. But if she were to receive a 100% disability rating from the Air Force, then I believe she likely would receive higher retirement benefits from the Air Force than if she retired based on her time in service. What the difference is, I can't say. Okay. So does that potential difference affect the due process argument? I don't believe it does, Your Honor. As for due process, if there was even a $1 difference, then I suppose that that would be sufficient to have a money-mandating claim. But when it comes to the due process argument, I don't see what the harmful error is. The Air Force evaluated whether Ms. Seidman was unfit due to either alleged PTSD or an alleged brain injury prior to April 2006. The only basis for rating her for those conditions by the Air Force is if they were unfitting at the time that she was placed on the TDRL or if they were caused by or arose from the back condition. Ms. Seidman has never argued in any forum that they were caused by or arose from the back condition. So the only argument at issue here is that they were unfitting at the time she was placed on the TDRL. The Air Force had evidence that they were not. There was a letter from Lieutenant Colonel Ford that the Secretary of the Air Force Personnel Council cited that was written. That letter is at page 8-0-1 or 8-0-7-9-1, excuse me. That letter was from November of 2005, so it's in the critical time period right before she was placed on the TDRL. Lieutenant Colonel Ford says that she's extremely intelligent and mentally capable of any challenge presented to her. Can you just explain in a common sense way what logic is of saying, let's suppose in 2006, no PTSD, back injury. She's put on the temporary list. 2007, say, 2008, PTSD shows up and it's proven and it's real and it's unfitting and it has nothing to do with the back. I think you've said and maybe I think cited whatever the Air Force regulation or standard is that says we don't care about that. You've got to ignore it. Why? What's the sense of that arrangement? Your Honor, it's a difference between the Air Force Disability Compensation System and the VA's Disability Compensation System. The VA compensates for all service-connected injuries. The Air Force only compensates service members when they are discharged for injuries or disabilities that make a service member unfit for service. Even if she has many other conditions that might be disabling, if they didn't render her unfit for service, if that wasn't the basis for her discharge as being unfit for service, the Air Force does not compensate for that. Would it make a difference if, to continue with my example, in 2007 two things are concluded. One is the back injury has resolved itself. She's now fit for service as far as the back injury is concerned, but now there's this other problem. What happens then? The PTSD is the other problem. Your Honor, the same thing that happened here would have happened. The Air Force would have analyzed whether that condition existed at the time before she was placed on the TDRL. I guess maybe that's the question. I don't understand. In September of 2007, in my example, I'm just making these dates up, back injury has resolved. She's ready to go back into the Air Force as far as the back injury is concerned. She's fit for that. But a week later, or maybe even on the same day, they say, but the PTSD renders her unfit. What happens? If that was the case, then if the Air Force determined that she was unfit due to PTSD, they could either place her on the TDRL to see if it resolved. That issue is resolved. Yes, Your Honor. Or they could discharge. If they didn't think that it was likely to change, if they thought it was permanent, they could discharge her then. If they discharge her because she was unfit due to PTSD, then the Air Force would rate her for PTSD in that situation. Also, on the same issue of the PTSD, the other piece of evidence that the Air Force relied on was in September 2006 when Ms. Sieben began seeking help from the VA for mental health problems. She reported, this is at page 135 of the record, she reported that in the summer of 2005, she had sought help from a mental health professional and that that doctor prescribed Prozac and that she had good results with the Prozac. So the Air Force said, well, you apparently sought some treatment, but you had good results. So that's evidence that even if you had that condition prior to the placement on the TDRL, it wasn't unfitting at that time. Ms. Sieben would not have, and the Air Force would not have had much reason to examine Ms. Sieben prior to her placement on the TDRL for those problems because she indicated no interest in seeking those. When she left Iraq, she filled out a checklist that's trying to determine  The Air Force asked her at page 459, are you currently interested in receiving help for a stress, emotional, alcohol, or family problem? She said no. Page 461, the Air Force asked her, during this appointment, have you sought or do you now intend to seek counseling or care for your mental health? And she said no. She was not directly involved in combat. She was not a person that would have been at a high risk for PTSD based on the Air Force's methods of identifying such people. Well, I'm almost out of time, so in conclusion, the military experts who see all of these cases, they reviewed all the evidence, they applied the proper standards, and they made a decision that is supported by substantial evidence. The trial court appropriately found that the Air Force's decision was supported by substantial evidence, and this court should have done that. Thank you, Mr. Mandelbaum. Ms. Hilliard, you've exhausted your time. You have a couple of minutes. Thank you, Connor. With respect to her post-traumatic stress disorder, first of all, Ms. Sieben did seek combat. I just want to make that very clear. She was in combat. In the form that the government was reading to you on page 459, she filled out yes, did she see coalition, enemy, and civilian wounded, killed, or dead during this deployment. She said yes, she had difficulty remembering. She said her health got worse. So her post-deployment, she said yes, this is 460, was constantly on guard, watchful, or easily startled. She answered yes, during this deployment, you ever feel that you were in great danger of being killed. So I don't have any understanding of what the government is saying when it says, well, how were we supposed to know that she was at risk for post-traumatic stress disorder when she filled out this form. The form that she filled out right after she finished combat, she said yes to all of those questions. So she was certainly at risk. Not only was she at risk, the medical evaluation report in 2005, and this is at A830, specifically noted other neurological conditions. So there was evidence that she was at risk for post-traumatic stress disorder and indeed was seeking mental health help at that time. Not only that, as we know, the government is taking the position that the only reason that she would be able to be evaluated for post-traumatic stress disorder is if she could prove that she had it the day that she was placed on the TDRL. And that's not what the rules require. DOD 1332.38 E3P624, and this is at A1071. I know these records can be hard to find. Specifically recognized that a veteran can be medically disabled for a condition that was incurred while that veteran was entitled to basic pay. That's exactly what this court recognized in Cronin. The traumatic stressors for post-traumatic stress disorder occurred when the veteran was on active duty. While maybe it wasn't formally diagnosed until later, it doesn't mean that the veteran didn't have it at the time. The problem here is that the Air Force denied her claim by saying there's no evidence. There's no evidence because she was never medically evaluated. This court in the first instance doesn't have to go through all the evidence and say, what do I think the right answer is? This court should say in the first instance, we don't make those determinations. We're going to send it back down, and she needs to be medically evaluated in the first instance. One point of clarification, she's not seeking a 100% rating for post-traumatic stress disorder. She just wants to be evaluated and get the rating that is fair and right based on the record. We need to wrap it up with one last word. Yes, Your Honor. I hope that after reviewing the briefing and hearing the oral argument in this case, that this court feels like something wasn't done right. The cases and Congress have been very clear that the disability benefits are pro-veteran. The veteran has a right to the veteran's day in court. Ms. Steven honorably served her country for 27 years, and I implore this court to give her her day in court. Thank you. The case is taken into submission.